**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**

OPHELIA FLORENCE,   CASE NO.: 1:19-cv-25274

    Plaintiff,

                                            **COMPLAINT**
                               **Plaintiff Demand a Trial by Jury**

v.

MLS BC CRUISES LTD,
MLS BC CRUISES INC., and
DOUGLAS REINMUTH individually
and in his official capacity,

    Defendants.
_____/

Plaintiff, OPHELIA FLORENCE, through her counsel, Kelly O'Connell, hereby complains of the Defendants MLS BC CRUISES LTD, MLS BC CRUISES INC., and DOUGLAS REINMUTH individually and in his official capacity, and alleges as follows:

**NATURE OF CASE**

1. Plaintiff complains pursuant to 42 U.S.C. § 1981 ("§ 1981"), Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); and the Florida Civil Rights Act of 1992, Section 760.10 *et seq*. ("FCRA") and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to sex/gender discrimination, race discrimination, color discrimination, hostile work environment, retaliation, intentional infliction of emotional distress, and negligent retention.

2. This action is to redress Defendants' unlawful employment practices against Plaintiff, including Defendants' unlawful discrimination and harassment against Plaintiff because of her

race, color, and sex/gender, Defendants' retaliation against Plaintiff because of her persistent complaints of discrimination, and Plaintiff's unlawful termination.

## JURISDICTION AND VENUE

3. This is an action for monetary damages relief pursuant to § 1981, Title VII, and FCRA § 760.10.

4. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under § 1981 and Title VII.

5. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## PROCEDURAL REQUIREMENTS

7. Plaintiff has complied with all statutory prerequisites to file this action.

8. On or around November 6, 2018, Plaintiff dual filed her charge with the Equal Employment Opportunity Commission ("EEOC"), Case number 10186854 and EEOC Charge Number: 510-2018-06503

9. On or around September 25, 2019, Plaintiff received the EEOC's Right to Sue Letter in reference to her EEOC charge.

10. This complaint was filed within ninety (90) days of the issuance of the EEOC's Right to Sue letter.

11. An EEOC filing automatically operates as a dual FCHR filing.

## PARTIES

12. At all material times, Plaintiff OPHELIA FLORENCE (hereinafter referred to as "Plaintiff" or "FLORENCE") is an individual African American woman who is currently a resident of the State of Georgia.

13. At the time of the facts giving rise to this complaint, Plaintiff FLORENCE lived in Miami-Dade, Florida.

14. At all material times, Defendant MLS BC CRUISES INC. is a foreign profit corporation duly existing by the virtues and laws of the State of Florida that does business in the State of Florida.

15. At all material times, Defendant MLS BC CRUISES LTD is a corporation duly existing by the virtues and laws of the State of Massachusetts and does business in the State of Florida.

16. At all times material, Defendant MLS BC CRUISES INC. and Defendant MLS BC CRUISES LTD (hereinafter referred collectively to as "Defendant" or "MLS") were Plaintiff's employers.

17. At all times material, Defendant MLS BC CRUISES INC. and Defendant MLS BC CRUISES LTD were joint employers of the Plaintiff.

18. At all times material, Defendant MLS BC CRUISES INC. and Defendant MLS BC CRUISES LTD constituted a single employer of the plaintiff.

19. At all times material, Defendant MLS BC CRUISES INC. and Defendant MLS BC CRUISES LTD controlled Plaintiff's work.

20. At all material times, Defendant MLS, is a foreign profit corporation created and authorized under the laws of the State of Florida.

21. Defendant MLS is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

22. At all material times, Defendant DOUGLAS REINMUTH (hereinafter referred to as "REINMUTH") was and is an individual man believed to reside in the state of Florida and live in Miami-Dade County.

23. At all material times, REINMUTH was and is MLS's Manager, and he was Plaintiff's Supervisor.

24. At all material times, Defendants MLS and DOUGLAS REINMUTH are herein referred to collectively as "Defendants."

**STATEMENT OF FACTS**

25. At all material times, MLS provides services ranging from shore excursions to port agency and turnaround operations for cruise ships in Spain, Portugal, and Florida, and also port agency services for cargo ships and yachts.

26. On or about June 4, 2018, MLS hired Plaintiff and she began working for MLS as a Scheduler. As a Scheduler, part of Plaintiff FLORENCE's duties was to assure operations for MLS ran on time, but she was also tasked with answering telephone calls and performing other clerical functions.

27. At all material times, Plaintiff Florence's Supervisor while working for MLS was the Defendant REINMUTH.

28. During Plaintiff FLORENCE employment with MLS, she witnessed several occasions where Defendant REINMUTH discriminated African American MLS's employees and made sexist comments to women.

29. By way of example, Defendant REINMUTH frequently discriminated against African American and black employees in the workplace by referring to them as, "**ANIMALS**," and would say, "**THE ANIMALS DON'T APPRECIATE ANYTHING I DO FOR THEM**."

30. By way of further example, Defendant REINMUTH would also frequently make sexist comments to women, instruct women to look happier, and tell female employees, "**IF YOU DON'T SMILE, I'M GOING TO FIRE YOU**."

31. At all material times, Defendant REINMUTH did not made such comments to MLS's male employees.

32. On or About June 18, 2018, many of MLS's Miami employees were invited to a farewell dinner that the company was promoting to the Manager GARRY ABBS that was leaving his position at the company.

33. During the dinner, Plaintiff FLORENCE was seated close by to the owner of the company, MARK DARBEY (hereinafter referred to as "DARBEY"), and REINMUTH.

34. At one point during the dinner, MLS's female HR Representative, KENIESHA TAYLOR (hereinafter referred to as "TAYLOR"), came by their table to inquire if additional food or drinks needed to be ordered. When TAYLOR approached Defendant REINMUTH, Defendant REINMUTH gestured with his hands for her to come and have a seat on his lap. Immediately, Plaintiff FLORENCE, DARBEY, and others present at their table looked at each other in shock due to witnessing REINMUTH's sexual advancement to the female employee.

35. On or around July 10, 2018, Plaintiff FLORENCE was sitting at her desk working and listening to music on her computer—which she was allowed to do at the workplace—when the Defendant REINMUTH walked by her and her female coworker JANEEL FRIAS

(hereinafter referred to as "FRIAS"). Defendant REINMUTH said to the two women, "**IS THAT PORN YOU ARE WATCHING?**"

36. Defendant REINMUTH's above sexual comment shocked Plaintiff FLORENCE so much, that she could not find the words to respond. Both her and FRIAS looked at each other in shock as it was obvious they were not watching porn and would not engage in such conduct in the office.

37. As Defendant REINMUTH walked away, Plaintiff FLORENCE responded, "**NO, I'M NOT WATCHING PORN**." Defendant REINMUTH smiled, laughed and replied to her, "**SOUNDS LIKE ASIAN PORT TO ME**."

38. Later, on the same day, Plaintiff FLORENCE reported the incident to MLS's HR Representative, TAYLOR. She informed her about REINMUTH inappropriate statement and how he made her feel uncomfortable in the workplace.

39. On or about July 17, 2018, pizza and chicken wings were being ordered by the company during a management meeting with Plaintiff FLORENCE, FRIAS, Defendant REINMUTH, and several other employees present. While the orders were being taken, Defendant REINMUTH walked towards FLORENCE and asked her in a sexual tone, "**IS TWELVE INCHES GOING TO BE ENOUGH FOR YOU OPHELIA?**"

40. Immediately, Plaintiff FLORENCE understood Defendant REINMUTH's above comment to refer to a male's penis and she felt embarrassed and ashamed.

41. Due to the continuing sexual comments by Defendant REINMUTH, it appeared to Plaintiff FLORENCE that MLS had not taken adequate steps to prevent continued unlawful conduct by Defendant REINMUTH.

42. As such, Plaintiff FLORENCE immediately got up and went to MLS's HR Representative office to tell TAYLOR about Defendant REINMUTH's continued inappropriate behavior. While making her second complaint, Plaintiff FLORENCE complained to TAYLOR what just happened at the management meeting, reiterated to TAYLOR how she felt very uncomfortable due to REINMUTH's sexual conduct, and told her that she wanted to go home.

43. After hearing Plaintiff FLORENCE's new complaint, TAYLOR spoke with another MLS HR employee, DIANA HOPPE (hereinafter referred to as "HOPPE"). HOPPE requested that FRIAS and Plaintiff FLORENCE write a statement detailing her complaint against REINMUTH.

44. Plaintiff FLORENCE understood that nothing else was done by MLS that day regarding her complaints of unlawful conduct.

45. The next day at work, Plaintiff FLORENCE was told that REINMUTH received a reprimand about his behavior and that he wanted to apologize.

46. Soon after, MLS's Vice President, PATRICK SCHNEIDER (hereinafter referred to as "SCHNEIDER") also texted Plaintiff FLORENCE to say he was sorry and that Defendant REINMUTH was embarrassed. SCHNEIDER told Plaintiff FLORENCE that Defendant REINMUTH was coming to apologize the next day.

47. Plaintiff FLORENCE then told SCHNEIDER that she didn't feel comfortable having Defendant REINMUTH close by her at that moment and as she still felt very anxious and emotionally distressed with the idea of having to work with him. As such, SCHNEIDER informed Plaintiff FLORENCE that he would tell Defendant REINMUTH to not come to the office the next day.

7

48. However, that same day, in the afternoon, Defendant REINMUTH walked into the office where Plaintiff FLORENCE was working.

49. As Plaintiff FLORENCE, that was not expecting to see Defendant REINMUTH, quickly got up from her desk, ran to the ladies' room and called SCHNEIDER to ask why Defendant REINMUTH came to the office. SCHNEIDER then told her that he would tell REINMUTH to leave the office immediately.

50. While Plaintiff FLORENCE waited for Defendant REINMUTH to leave the office, she cried due to feeling unprotected by MLS and being forced to be in proximity of Defendant REINMUTH.

51. Soon after this, Plaintiff FLORENCE called to HOPPE to notify her of the situation. HOPPE suggested that Plaintiff FLORENCE work from home on the days that Defendant REINMUTH would be at the office. Since Defendant REINMUTH was in the office only on Tuesdays Plaintiff FLORENCE agreed. However, HOPPE told FLORENCE that she would have to work with Defendant REINMUTH because he was her Supervisor at MLS.

52. During this call, Plaintiff FLORENCE cried and explained her distress and distrust of the company to HOPPE. HOPPE did not offer any other support.

53. Soon after that conversation with HOPPE, Plaintiff FLORENCE was informed that she needed to participate in a meeting with Defendant REINMUTH and other MLS's employees. During this meeting, Defendant REINMUTH called the MLS's African-American employees, "**ANIMALS**," referred to them as, "**GHETTO,**" and said, "**PEOPLE FROM THE GHETTOS TRYING TO PUT CHICKEN ON THEIR TABLE**."

54. Defendant REINMUTH's above comments shocked and greatly offended Plaintiff FLORENCE.

55. Around this same time, it became apparent that Defendant REINMUTH knew of Plaintiff FLORENCE's complaints of discrimination against him.

56. After learning about Plaintiff FLORENCE's complaints to MLS's HR, REINMUTH increased FLORENCE's workload and office tasks.

57. It was Plaintiff FLORENCE's understanding that Defendant REINMUTH increased her workload and made her work-life more difficult in retaliation and in order to fire her.

58. On or about August 28, 2018, Defendant REINMUTH blamed Plaintiff FLORENCE for a scheduling issue that was caused by other MLS's employees and terminated her.

59. As retaliatory action, Defendant REINMUTH terminated Plaintiff FLORENCE because she complained with MLS's HR Representatives about his inappropriate behavior at the workplace.

60. Regarding the August 28, 2018 scheduling issue, the state of Florida's Department of Economic Opportunity Reemployment Assistance Program found that Plaintiff FLORENCE was not terminated for misconduct and that she followed all instructions from her supervisors.

61. Since the onset of her anxiety and emotional distress, Plaintiff has been receiving treatment from a psychiatrist and has been prescribed and is taking medications for her emotional and psychological suffering.

62. The above are just some of the examples of unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

63. Through Defendants' repeated continuous unlawful conduct, discrimination, retaliation, and sexual harassment, Defendants' subjected Plaintiff to an ongoing hostile environment, which lead to her termination.

64. At all material times, Defendant MLS knew or should have known of Defendant REINMUTH's repeated continuous unlawful conduct, discrimination, and sexual harassment, as described above.

65. At all material times, Defendant MLS knew or should have known of Defendant REINMUTH's retaliatory acts and that Plaintiff FLORENCE's termination was a retaliatory act.

66. At all material times, Defendant MLS failed to adequately respond to Defendant REINMUTH's unlawful conduct and failed to prevent Defendant REINMUTH's retaliatory acts and that Plaintiff FLORENCE's termination.

67. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

68. Defendants discriminated against and retaliated against Plaintiff because of her sex/gender, race, and because she complained or opposed the unlawful conduct of Defendants related to the above-protected classes.

69. At all material times, Defendants' above unlawful conduct interfered and discouraged Plaintiff from continuing her employment with Defendants and from complaining.

70. At all material times, Plaintiff opposed and complained of Defendants' ongoing discrimination, retaliation, and unlawful conduct.

71. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and severely emotionally distressed.

72. As a result of Defendants' continued harassment of Plaintiff, she suffered numerous injuries including physical, economic, and emotional damages.

73. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, anxiety, depression, loss of sleep, humiliation, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

74. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

75. At all times material, Defendants and Defendants' supervisors acted with deliberate indifference to the discrimination and retaliation Plaintiff faced.

76. Plaintiff claims unlawful constructive and/or unlawful actual discharge and also seeks reinstatement

77. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all the Defendants, jointly and severally.

## COUNT I: DISCRIMINATION
## UNDER TITLE VII
## [AGAINST DEFENDANT MLS]

78. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the previous paragraphs 1 to 77.

79. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2. [Section 703] states in relevant part as follows:

> (a) Employer Practices; it shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her/his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

80. Throughout 2018, Defendant MLS allowed their manager to Defendant REINMUTH to engage in discriminatory practices which resulted in Plaintiff being subjected to a discriminatory hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., as amended.

81. Defendant REINMUTH's harassment of Plaintiff was, in whole or in part because she was a woman, African American, and black.

82. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of her race, color, and sex/gender.

### COUNT II: RETALIATION
### UNDER TITLE VII
### [AGAINST DEFENDANT MLS]

83. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the previous paragraphs 1 to 72.

84. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

85. Defendant REINMUTH subjected Plaintiff to unlawful discrimination at the workplace based on his conduct toward and comments about women and African Americans.

86. Plaintiff engaged in protected activity when she opposed Defendant REINMUTH's unlawful acts and complained of his acts to MLS's HR department and MLS's upper management.

87. Because of Plaintiff's complaints of unlawful discrimination, Defendant REINMUTH subjected Plaintiff to increased duties, increased scrutiny, and terminated her.

88. The Defendants' harassment of Plaintiff was, in whole or in part, in retaliation for her complaints of discrimination.

89. The Defendant MLS has discriminated against and harassed the Plaintiff in the terms and conditions of her employment in retaliation for her lawfully having engaged in statutorily protected activity and as a result of her complaints of discrimination.

90. At all material times, Defendant MLS knew of the hostile work environment and failed to take prompt remedial action or steps to reassure Plaintiff that complaints of discrimination would be quickly corrected.

91. Defendant MLS engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privilege of employment because of her opposition to the unlawful employment practices of Defendant.

**COUNT III: FCRA §760.10**
**DISCRIMINATION**
**[AGAINST ALL DEFENDANTS]**

92. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the previous paragraphs 1 to 77.

93. At all times relevant to this action, Plaintiff was and is a woman, African American, and black.

94. Throughout 2018, Defendant MLS allowed their manager to Defendant REINMUTH to engage in discriminatory practices which resulted in Plaintiff being subjected to a discriminatory hostile work environment in FCRA.

95. Defendant REINMUTH's harassment of Plaintiff was, in whole or in part because she was a woman, African American, and black.

96. Defendants are prohibited under the FCRA from discriminating against Plaintiff because of her sex/gender, race, and color with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

97. Defendants violated the FCRA by unlawfully discriminating against Plaintiff based her sex/gender, race, and color.

98. Plaintiff has been damaged by the illegal conduct of Defendants.

## COUNT IV: FCRA RETALIATION
## [AGAINST ALL DEFENDANTS]

99. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the previous paragraphs 1 to 77.

100. Defendant REINMUTH subjected Plaintiff to unlawful discrimination at the workplace based on his conduct toward and comments about women and African Americans.

101. Plaintiff engaged in protected activity when she opposed Defendant REINMUTH's unlawful acts and complained of his acts to MLS's HR department and MLS's upper management.

102. Because of Plaintiff's complaints of unlawful discrimination, Defendant REINMUTH subjected Plaintiff to increased duties, increased scrutiny, and terminated her.

103. The Defendants' harassment of Plaintiff was, in whole or in part, in retaliation for her complaints of discrimination.

104. The Defendants has discriminated against and harassed the Plaintiff in the terms and conditions of her employment and has denied the Plaintiff continued employment in retaliation for her lawfully having engaged in statutorily protected activity and as a result of her complaints of discrimination.

105. At all material times, Defendants knew of the hostile work environment and failed to take prompt remedial action or steps to reassure Plaintiff that complaints of discrimination would be quickly corrected.

### COUNT V: NEGLIGENT RETENTION DEFENDANT
### [AGAINST DEFENDANT MLS]

106. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the previous paragraphs 1 to 77.

107. Defendant MLS negligently retained Defendant MLS's manager Defendant REINMUTH.

108. Defendant MLS knew or should have known that Defendant MLS's manager Defendant REINMUTH was dangerous, incompetent, and a threat to do harm to employees under his supervision or working in their office.

109. Defendant MLS negligently retained Defendant MLS's supervisors and Human Resource employees based on their failure to respond to and address Defendant REINMUTH's unlawful acts in their office.

110. Defendant MLS knew or should have known that MLS's manager Defendant REINMUTH and Human Resource employees were dangerous, incompetent, and a threat to do harm to employees under their supervision or working in their office.

111. As direct and proximate consequences of Defendant MLS's negligent retention of such managers and employees, Plaintiff has suffered serious physical, psychological, and emotional injuries that have required, or will require in the future, medical and psychological treatment

### COUNT VI: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### [AGAINST DEFENDANT REINMUTH]

112. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the previous paragraphs 1 to 77.

113. Defendant REINMUTH actions described in the above paragraphs was intentional, extreme, and outrageous and caused Plaintiff to suffer extreme emotional distress.

114. At all material times, Defendant REINMUTH knew that his actions and failure to correct the hostile work environment described in the above paragraphs would cause Plaintiff to suffer extreme emotional distress.

115. As direct and proximate consequences of the conduct described in the above paragraphs, Plaintiff has been injured and suffered severe psychological and emotional injuries including degradation, humiliation, mental anguish, loss of the capacity for the enjoyment of life, loss of dignity, and other nonpecuniary and intangible injuries that have required, or will require in the future, medical and psychological treatment.

## COUNT VII: DISCRIMINATION
## UNDER FEDERAL LAW 42 U.S.C. § 1981
## [AGAINST DEFENDANT MLS and Defendant REINMUTH ]

116. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the previous paragraphs 1 to 77.

117. 42 USC § 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

118. Plaintiff, an African American and black woman, was discriminated against by Defendants because of her race, ancestry and ethnicity as provided under 42 USC § 1981 and has suffered damages as set forth herein.

119. Plaintiff claims that Defendants unlawfully discriminated against and terminated Plaintiff because of her race, ancestry and ethnicity.

120. At all material times, Plaintiff's termination and increased duties by Defendants was a "significant change" in employment status.

121. Plaintiff was discriminated against by Defendants because of her race, ancestry and ethnicity as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

122. Defendants allowed the unlawful discrimination towards Plaintiff and employees of her same race, ancestry and ethnicity to continue.

## COUNT VIII: RETALIATION
## UNDER FEDERAL LAW 42 U.S.C. § 1981
## [AGAINST DEFENDANT MLS and Defendant REINMUTH]

123. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in the previous paragraphs 1 to 77.

124. 42 USC § 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

125. Plaintiff, an African American and black woman, was discriminated against by Defendants because of her race, ancestry and ethnicity as provided under 42 USC § 1981 and has suffered damages as set forth herein.

126. Defendant REINMUTH subjected Plaintiff to unlawful discrimination at the workplace based on his conduct toward and comments about women and African Americans.

127. Plaintiff engaged in protected activity when she opposed Defendant REINMUTH's unlawful acts and complained of his acts to MLS's HR department and MLS's upper management.

128. Because of Plaintiff's complaints of unlawful discrimination, Defendant REINMUTH subjected Plaintiff to increased duties, increased scrutiny, and terminated her.

129. The Defendants' harassment of Plaintiff was, in whole or in part, in retaliation for her complaints of discrimination.

130. The Defendants has discriminated against and harassed the Plaintiff in the terms and conditions of her employment and has denied the Plaintiff continued employment in retaliation for her lawfully having engaged in statutorily protected activity and as a result of her complaints of discrimination.

131. At all material times, Defendants knew of the hostile work environment and failed to take prompt remedial action or steps to reassure Plaintiff that complaints of discrimination would be quickly corrected.

132. Plaintiff claims unlawful retaliation under 42 U.S.C. 1981 for opposition to Defendants' unlawful employment practices and has suffered damages as set forth herein.

### COUNT IX: VICARIOUS LIABILITY - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### [AGAINST DEFENDANT MLS]

133. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in all previous paragraphs herein.

134. At all times material, Defendant REINMUTH was an employee, servant and/or agent of Defendant MLS and at all times material was acting within the course and scope of their employment.

135. Therefore, Defendant MLS is vicariously liable for the tortious acts committed by Defendant REINMUTH as set forth in the above paragraphs.

136. As a direct and proximate result of, Defendant REINMUTH's conduct, Plaintiff has been injured and suffered severe psychological and emotional injuries including degradation, humiliation, mental anguish, loss of the capacity for the enjoyment of life, loss of dignity, and other nonpecuniary and intangible injuries.

137. As a direct and proximate result of Defendant REINMUTH's conduct, Plaintiff has been injured and suffered severe psychological and emotional injuries including degradation, humiliation, mental anguish, loss of the capacity for the enjoyment of life, loss of dignity, and other nonpecuniary and intangible injuries.

**WHEREFORE**, Plaintiff, requests this Honorable Court: Enter judgment for Plaintiff and against Defendants MLS and Defendant REINMUTH for compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, and prejudgment interest thereon; Grant Plaintiff her interests and costs; Grant Plaintiff her award of reasonable attorneys' fees (including expert fees); and Any other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

    Dated: Miami, Florida
    December 23, 2019

                                                            Respectfully submitted,

                                                            Kelly L. O'Connell, Esq.
                                                            THE COCHRAN LAW FIRM
                                                            *Attorneys for Plaintiff*
                                                            Fla Bar No.: 0119312
                                                           koconnell@cochranfirm.com
                                                           5033 SE Federal Highway
                                                           Stuart, Florida 34997